LESTER F. STALKER, Claimant, v. STATE OF NEW YORK, Defendant.
(Claim No. 30687.)

Court of Claims, November 10, 1954.

*John E. Roe, John W. Tabner* and *Nathan M. Medwin* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

MAJOR, J.   This claim was filed to recover damages for injuries suffered as a result of an accident on the morning of March 19, 1950.   The trial was held at Albany, New York, on March 23 and 24, 1954.

The claimant, a resident of Lee, Massachusetts, on Saturday, March 18, 1950, at about 6:30 P.M., drove his 1940 Chevrolet two-door sedan, with Raymond Bradford and Mario Santolin as passengers, from Lee, Massachusetts, to Sheffield, Massachusetts, a distance of 12 to 15 miles, where they attended a dance.   Upon

leaving the dance, they drove to Hudson, New York, approximately 50 miles, by way of New York State Route No. 23. Upon arriving in Hudson, the claimant and his two passengers went to a restaurant where they had some beer. The party then moved farther up the street to another tavern to watch a wrestling match on television, where they had more beer. Around midnight, the claimant and his two companions riding in claimant's car, started back to Massachusetts, intending to take the same route, but the claimant made a wrong turn and drove onto Route No. 66. After driving northerly for a short distance on this route, the claimant approached " Bunker's Bridge " along a slight downgrade, with a gradually rounding curve in the road as it approached the south end thereof.

Route No. 66 is a 20-foot, 2-lane concrete State highway and narrows down to 18 feet as it crosses the bridge. There was a white line in the center of the highway and shoulders bordered each side of the road. Concrete guide posts paralleled the highway.

The bridge was constructed by towns in Columbia County in 1908, and was taken over by the State from the county on May 4, 1949. The construction of a new bridge was started in May, 1950. It had an overall length of 80.2 feet. About 240 feet southerly of the south end of the bridge, a slight curve of about 9 degrees (600-foot radius) begins. This curve straightens out in a short tangent before crossing the bridge, with a slight incline of 1.43%. Extending out from the southwest corner of the bridge parapet and along the approach to the bridge, there was a fence painted with black and white stripes. There was a " SLOW " sign located about 375 feet before reaching the bridge, and at about 275 feet there was a reflectorized warning sign thirty-six inches by thirty-six inches, with five-inch letters of " NARROW BRIDGE ". There was also a tonnage sign.

General winter weather conditions prevailed for the time of the year, with snow on the ground and ice in spots, but the highway was clear, dry and free of ice and snow at and approaching the point of the accident. The night was clear and visibility was good.

The claimant's car ran into the south end of the westerly or left side of the bridge parapet. At the time of the accident, claimant was driving and his two passengers were seated in the front seat with him. These three were the only persons present at the time of the accident.

As a result of this collision, the claimant's car glanced off, went across the bridge and came to a stop five or six feet from

its northerly approach. Claimant was found lying in the center of the bridge, with his head near the east edge. The car door was also in the center of the bridge. The major part of the damage to the claimant's car was on the left front and side.

The claimant remembers only faintly leaving Hudson to return to his home, and remembers nothing thereafter until about the following Memorial Day, May 30, 1950, while in Columbia Hospital in Hudson, New York.

Trooper Potts testified that the other occupants of the car, Raymond Bradford, a witness at the trial, and Mario Santolin, both stated in their interview with Trooper Potts after the accident, that they did not know what happened, because they were asleep; and that the claimant told the troopers that he did not know how the accident occurred and mentioned the lights of an oncoming car. Trooper Cox testified in a similar manner on this investigation. Witness Bradford admitted on cross-examination that he may have made such a statement. Mario Santolin did not testify at the trial.

While claimant had a lapse of memory of what transpired before and after this accident, nevertheless, the signs and warnings along and in the highway were adequate and sufficient to warn an ordinary prudent driver of the conditions of the highway at this bridge. The court finds that the claimant saw these signs, warnings and guides. To hold that he did not see what he should have seen is incredible as a matter of law, (*Weigand* v. *United Traction Co.*, 221 N. Y. 39, 42); and, having seen these warnings and guides, it was his duty to govern the operation and speed of his car accordingly.

It is the duty of the claimant to prove that the negligence of the State in the construction and/or maintenance of this road and bridge in a reasonably safe condition for travelers thereof, was the proximate cause of this accident and resultant injuries, and that he was free of negligence which contributed thereto.

The claimant has failed to sustain this burden of proof and to the contrary, this court finds from the credible evidence and physical facts and circumstances that the State of New York is free from negligence which was a proximate cause of this accident, and that the negligence of the claimant, driver of the car, was such proximate cause.

The claim herein is hereby dismissed.

The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.